## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS — CENTRAL DIVISION

IN RE: Marty Duncan & Angela
Duncan

CASE NO. 2:25-bk-12505
CHAPTER 13

## OBJECTION TO CONFIRMATION

Union Bank and Trust Company (herein, "UB&T"), by its Counsel, Barton & Roper, PLLC, and for its *Objection to Confirmation*, states:

1. That Debtor is indebted to UB&T in the sum of $45,744.58, together with interest accruing at the rate of $11.10 per day from July 28, 2025.

2. That said indebtedness is created pursuant to the provisions of that certain Promissory Note and Security Agreement, dated April 12, 2024, evidencing an indebtedness in the original sum of $128,747.22. A true and correct copy of said Promissory and Security Agreement is attached hereto as Exhibit One.

3. That said indebtedness is securing by a first lien security interest in and to a 2020 Cadillac Escalade, a 2007 Trail-Lite trailer. Said security interests in all items of collateral are created pursuant to the terms of the Security Agreement attached hereto as Exhibit One.

4. That the security interest is perfected pursuant to the

terms of the Certificate of Title attached hereto as Exhibit Two 2020 Cadillac Escalade and Exhibit Three 2007 Trail Lite trailer.

5.   That the Debtor's plan proposes to pay to UB&T the sum of $35,100.00.

6.   That UB&T's collateral has an aggregate value of in excess of $50,000.00.

7.   That, therefore, the Debtor's plan does not propose to pay UB&T in full the value of its collateral, as a result seeks to cram down and not pay the Debtor's full indebtedness to UB&T, and does not treat UB&T at least as well as UB&T would be treated in a Chapter 7 Bankruptcy.

8.   That Debtor's plan is not proposed in good faith.

WHEREFORE, UB&T prays that Debtor's plan as filed herein not be confirmed; and for all further and lawful relief to which it is entitled, it will forever pray.

**Barton & Roper, PLLC**
PO Box 507
Monticello, AR 71657
(870) 367-6288

Whit Barton (79010)
wbarton@bartonandroper.com

## CERTIFICATE OF SERVICE

I, Whit Barton, a member of Barton & Roper, PLLC, by the above signature, do hereby certify that a copy of the foregoing Objection to Confirmation was served on the __18th__ day of August, 2025 as follows:

Lindsey D. Dilks
1008 Cumberland Street
*Little Rock, Arkansas 72202*
*(501) 224-9770*

Jack W. Gooding
Chapter 13 Trustee
PO Box 8202
Little Rock, AR 72221-8202
(501) 537-4400

WB/srd

# PROMISSORY NOTE AND SECURITY AGREEMENT
### (Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note and Security Agreement (Loan Agreement) is April 12, 2024. The parties and their addresses are:

**LENDER:**
UNION BANK & TRUST COMPANY
102 West McCloy
Monticello, AR 71655
Telephone: (870) 460-6400

**BORROWER:**
MARTIE EUGENE DUNCAN
119 S CEDAR ST
DE WITT, AR 72042

ANGELA RENEE DUNCAN
119 S CEDAR ST
DE WITT, AR 72042

**1. DEFINITIONS.** As used in this Loan Agreement, the terms have the following meanings:

A. **Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

B. **Loan Agreement.** Loan Agreement refers to this combined Note and Security Agreement, and any extensions, renewals, modifications and substitutions of this Loan Agreement.

C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Loan Agreement.

D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

E. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

F. **Percent.** Rates and rate change limitations are expressed as annualized percentages.

G. **Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Loan Agreement will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| February 13, 2023 | ~~████~~ | $85,293.64 |
| March 31, 2023 | ~~████~~ | $54,086.00 |

The remaining balance of all notes listed in the table above is $128,631.22.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $128,747.22 (Principal) plus interest from April 12, 2024 on the unpaid Principal balance until this Loan Agreement matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Loan Agreement at the rate of 8.990 percent (Interest Rate).

A. **Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at the Interest Rate in effect from time to time, until paid in full.

B. **Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

C. **Statutory Authority.** The amount assessed or collected on this Loan Agreement is authorized by the Arkansas usury laws under Ark. Const. (Amendment 89), provided such laws are not otherwise preempted by federal laws and regulations.

D. **Accrual.** Interest accrues using an Actual/360 days counting method.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

A. **Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.

Interest Due. A(n) Interest Due fee of $34.92 payable from separate funds on or before today's date.
Loan Processing Fee. A(n) Loan Processing Fee fee of $210.00 payable from the loan proceeds.
Filing. A(n) Filing fee of $6.00 payable from the loan proceeds.

**6. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

**A. Late Charge.** If a payment is more than 10 days late, I will be charged 10.000 percent of the Unpaid Portion of Payment or $25.00, whichever is greater. However, this charge will not be greater than $100.00. I will pay this late charge promptly but only once for each late payment.

**7. PAYMENT.** I agree to pay this Loan Agreement on demand, but if no demand is made, I agree to pay this Loan Agreement in 66 payments. A payment of $2,497.28 will be due May 27, 2024, and on the 27th day of each month thereafter. A final payment of the entire unpaid balance of Principal and interest will be due October 27, 2029.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, then to late charges that are due, and finally to any charges that I owe other than principal and interest. If you and I agree to a different application of payments, we will describe our agreement on this Loan Agreement. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is TO REFINANCE LOANS.

**10. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement and by the following, previously executed, security instruments or agreements: REFER TO UCC FILING 40000265566195 DATED 2/15/2023 .

**11. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

(1) Sums Advanced under the terms of this Loan Agreement. All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

(2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Security Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**B. Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**C. Property Description.** The Property subject to this Security Agreement is described as follows:

(1) Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Motor Vehicle of Make: FREIGHTLINER, Year: 2014, Model: CASCADIA 125, VIN: 3AKJGLDV4ESFL1182.

A Motor Vehicle of Make: CADILLAC, Year: 2020, Model: ESCALADE ESV, VIN: 1GYS4HKJ8LR122276.

A Trailer of Make: TRAIL-LITE, Year: 2007, Model: , VIN/Serial No.: 4WYF07U2471405864.

A Trailer of Make: TIMPTE, Year: 2022, Model: , VIN/Serial No.: 1TDH40029NB171080, and additionally described: TOGETHER WITH ANY AND ALL REPLACEMENTS, ADDITIONS, AND ACCESSORIES THERETO: This financing Statement covers the types (and items) of property indicated below that Debtor owns or has the rights in which to transfer an interest, now or in the future, wherever the property is or will be located, and all proceeds and products of the sale (including, but limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the property): Accounts and Other Rights to payment: All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor. Inventory: All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business. Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment. Instruments and Chattel Paper: all instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper. General Intangibles: All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name. Documents: All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts. Farm Products and Supplies: All farm products

MARTIE EUGENE DUNCAN
Arkansas Promissory Note and Security Agreement
AR/4XXXUBAKB00000000003267043041124N

Wolters Kluwer Financial Services, Inc.©1996, 2024 Bankers Systems™

including, but not limited to, all pou , and livestock and their young, along with their produ.., products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplied used or produced in Debtor's farming operations. Government Payments and Programs: All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program. Investment Property: All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets. Deposit Accounts: All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts..

**D. Duties Toward Property.**

(1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) Use, Location, and Protection of the Property. I will keep the Property in my possession and in good repair. I will use it only for commercial purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.

(3) Selling, Leasing or Encumbering the Property. I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

(4) Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers. So long as I am not in default under this Security Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be taken out of state permanently nor removed from the United States or Canada without your prior written consent.

**E. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.

(9) make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**F. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. I am located at the address indicated in the DATE AND PARTIES section. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**G. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

**12. DEFAULT.** I understand that you may demand payment anytime at your discretion. For example, you may demand payment in full if any of the following events (known separately and collectively as an Event of Default) occur:

**A. Payments.** I fail to make a payment in full when due.

**B. Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Loan Agreement or any other obligations I have with you.

**C. Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Loan Agreement.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

M. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Loan Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**13. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**14. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Loan Agreement, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement.

(1) You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Loan Agreement.

(4) You, or any institution participating in this Loan Agreement, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Loan Agreement, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**15. REMEDIES.** After I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Loan Agreement immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Loan Agreement, and accrue interest at the highest post-maturity interest rate.

E. **Attachment.** You may attach or garnish my wages or earnings.

F. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Loan Agreement against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Loan Agreement" means the total amount to which you are entitled to demand payment under the terms of this Loan Agreement at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Loan Agreement, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

G. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

H. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail to my address listed in this Loan Agreement will be reasonable notice to me under the Arkansas Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Loan Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

I. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

J. Waiver. Except as otherwise required by ... , by choosing any one or more of these remedies you do ...t give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

**16. COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement or any other Loan Document. Expenses include, but are not limited to, reasonable attorneys' fees (as determined under Ark. Code Ann. §16-22-308), court costs, and other legal expenses. If not paid immediately, these expenses will bear interest from the date of the payment until paid in full at the same interest rate in effect as provided in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

**17. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

**18. WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

A. Ownership of Property. I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

**19. INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

A. Property Insurance. I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Loan Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. This insurance coverage does not satisfy any liability or property insurance that may be mandated by applicable state or federal law. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

**20. APPLICABLE LAW.** This Loan Agreement is governed by the laws of Arkansas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Arkansas, unless otherwise required by law.

**21. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Loan Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**22. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Loan Agreement may not be amended or modified by oral agreement. No amendment or modification of this Loan Agreement is effective unless made in writing. This Loan Agreement and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**23. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Loan Agreement.

**24. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**25. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**26. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**27. SIGNATURES.** By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

X *Martie Eugene Duncan* Date 4-12-2024
MARTIE EUGENE DUNCAN

*Angela Renee Duncan* Date 4-12-2024
ANGELA RENEE DUNCAN

LENDER:

Union Bank & Trust Company

By *Mark Tinor* Date 4-12-2024
Mark Tinor, Senior Vice President

# CERTIFICATE OF TITLE

## STATE OF ARKANSAS

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | | BODY TYPE |
|---|---|---|---|---|---|
| 1GYS4HKJ8LR122276 | 2020 | CADI | ESCALADE | | UT |

| TITLE NUMBER | PREVIOUS TITLE NUMBER | PREV. TITLE STATE | ISSUE DATE | ODOMETER | UNLADEN WEIGHT |
|---|---|---|---|---|---|
| 761014047181 | MS0015451648 | MS | 05/15/2023 | 58491 | 6088 |

MAILING ADDRESS

REMARKS

OD ACTUAL

UNION BANK AND TRUST CO
PO BOX 270
MONTICELLO AR 71657-0270

OWNER

DUNCAN, MARTIE EUGENE OR ANGELA RENEE
119 S CEDAR ST
DEWITT AR 72042-2119

OWNER'S SIGNATURE (IF JOINT OWNERSHIP, BOTH MUST SIGN)
THIS TITLE MUST BE SIGNED UPON RECEIPT BY OWNERS

---

**FIRST LIENHOLDER**

UNION BANK AND TRUST CO
PO BOX 270
MONTICELLO AR 71657-0270

DATE OF LIEN: 03/31/2023

**FIRST RELEASE**

INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED:

Name

Title _____ Date _____

---

VEHICLE IDENTIFICATION NUMBER



TITLE NUMBER



The Department of Finance and Administration, State of Arkansas, hereby certifies that the applicant named hereon is duly registered as the owner of the vehicle described above. From the statements of the owner and the records on file with this department the hereon described vehicle is subject to the liens enumerated hereon.

In Witness Whereof, I have affixed my hand and seal.

*Charles S. Collins*
COMMISSIONER OF REVENUE

15425436

SRO0101

VOID IF ALTERED


## Vehicle Information

| | |
|---|---|
| Vehicle: | 2020 Cadillac Escalade ESV Utility 4D Luxury 4WD 6.2L V8 |
| Region: | Southeastern |
| Period: | July 30, 2025 |
| VIN: | 1GYS4HKJ8LR122276 |
| Mileage: | 89,000 |
| Typically Equipped SRP: | $88,090 |

## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly User** | | | | |
| Clean Trade-In | $35,150 | -$1,775 | $325 | **$33,700** |
| Clean Loan | $31,650 | -$1,775 | $325 | **$30,200** |
| Clean Retail | $43,675 | -$1,775 | $375 | **$42,275** |

# CERTIFICATE OF TITLE

## STATE OF ARKANSAS

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | | BODY TYPE |
|---|---|---|---|---|---|
| 4WYF07U2471405884 | 2007 | TRLY | | | CT |

| TITLE NUMBER | PREVIOUS TITLE NUMBER | PREV. TITLE STATE | ISSUE DATE | ODOMETER | UNLADEN WEIGHT |
|---|---|---|---|---|---|
| 761013880419 | 761011597376 | AR | 03/15/2023 | 0 | 11500 |

MAILING ADDRESS

REMARKS

UNION BANK & TRUST COMPANY
102 W MCCLOY ST
MONTICELLO AR 71655-4319

OWNER

DUNCAN, MARTIE EUGENE OR ANGELA RENEE
119 S CREDAR ST
DEWITT AR 72042

OWNER'S SIGNATURE (IF JOINT OWNERSHIP, BOTH MUST SIGN)
THIS TITLE MUST BE SIGNED UPON RECEIPT BY OWNERS

---

**FIRST LIENHOLDER**

UNION BANK & TRUST COMPANY
102 W MCCLOY ST
MONTICELLO AR 71655-4319

DATE OF LIEN: 02/13/2023

**FIRST RELEASE**

INTEREST IN THE ABOVE DESCRIBED VEHICLE IS HEREBY RELEASED:

Name

Title                                    Date

---

VEHICLE IDENTIFICATION NUMBER



TITLE NUMBER



The Department of Finance and Administration, State of Arkansas, hereby certifies that the applicant named hereon is duly registered as the owner of the vehicle described above. From the statements of the owner and the records on file with this department the hereon described vehicle is subject to the liens enumerated hereon.

In Witness Whereof, I have affixed my hand and seal.

*Charles S. Collins*

COMMISSIONER OF REVENUE

SRO3101

15208447

| | | |
|---|---|---|
| **Vehicle Type** | Travel Trailers/5th Wheels | |
| **Series** | Trail-Bay Travel Trailers Series | |
| **Model** | M-3532BH | |
| **Length x Width** | 35' x 8' | |
| **Axles** | 2 | |
| **Weight (lbs)** | 7517 | |
| **Self-Contained** | Yes | |
| **Slides** | 1 | |

| | Suggested List | Used Wholesale Trade-In | Used Retail |
|---|---|---|---|
| BASE PRICE | $31,305 | $7,250 | $11,400 |
| TOTAL PRICE | $31,305 | $7,250 | $11,400 |

No notes available

**Suggested List**
The value listed in this column reflects the approximate price of the unit when it is brand new. The prices listed are furnished by the manufacturer and are assumed to be correct. The list price does not include freight charges.

**Used Wholesale Trade-In**
(Low Book) - This column reflects the average wholesale value of a used unit "ready for resale". This may also be considered a trade-in value.

**Used Retail**
(High Book) - This column reflects the retail value of a used unit "ready for resale".

**"BRAND NEW", Non Current:**
The Used Retail Value does not represent "brand new" non-current year vehicles. Recent market research shows that "brand new" non-current models can increase the used value of an identical model by 6%-12%.

**Self-Contained**
This column will inform you as to whether the individual unit is self-contained or not.

**Note:**

| Creditor and last 4 digits of account number | Collateral | Monthly payment amount | To be paid |
|---|---|---|---|
| Ally Financial, Inc #9552 | 2017 Dodge Ram | $250.00 | ☒ Preconfirmation<br>☐ Postconfirmation |
| Union Bank & Trust #0272 | 2020 Cadillac Escalade | $250.00 | ☒ Preconfirmation<br>☐ Postconfirmation |

**3.2  Maintenance of payments and cure of default (long term-debts, including debts secured by real property that debtor(s) intend to retain).**

*Check one.*
☐ **None.** *If "None" is checked, the rest of § 3.2 need not be completed or reproduced.*

☒ The debtor(s) will maintain the current contractual installment payments on the secured claims listed below, including any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the trustee or directly by the debtor(s), as specified below. The debtor(s) will resume payments to the creditors upon completion of the plan, pursuant to the terms of the respective agreements. Any existing arrearage will be paid in full through disbursements by the trustee, with interest, if any, at the rate stated.

The current contractual installment payments for real estate may be increased or decreased, and the plan payment increased, if necessary, based upon information provided by the creditor and upon the absence of objection from the debtor(s) under applicable rules.  Unless otherwise ordered by the court, the amounts listed on a filed and allowed proof of claim will control over any contrary amounts listed below as to the current installment payment and arrearage amount. **If relief from the automatic stay is ordered as to any item of collateral listed in this paragraph, then, unless otherwise ordered by the court, all payments under this paragraph as to that collateral will cease, and all secured claims based on that collateral will no longer be treated by the plan.**

| Creditor and last 4 digits of account number | Collateral | Monthly installment payment | Monthly installment payment disbursed by | Estimated arrearage amount | Monthly arrearage payment | Interest rate, if any, for arrearage payment |
|---|---|---|---|---|---|---|
| Southern Bancorp #2530 | 119 S. Cedar St, DeWitt, AR 72042 | $431.04 | ☐ Debtor(s)<br>☒ Trustee | $431.04 | $7.18 | N/A |

**3.3  Secured claims excluded from 11 U.S.C. § 506 (non-506 claims).**

*Check one.*
☐ **None.** *If "None" is checked, the rest of § 3.3 need not be completed or reproduced.*

☒ Claims listed in this subsection consist of debts that were:

(1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s) ("910 car claims"), or
(2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value ('PMSI within one year").

The creditors below will retain their liens and secured claims will be paid in full under the plan at the monthly payment and interest at the rate stated below. Unless otherwise ordered by the court, the claim amounts listed on a filed and allowed proof of claim will control over any contrary amounts listed below, except as to value, interest rate and monthly payment.

| Creditor and last 4 digits of account number | Collateral | Purchase date | Debt/ estimated claim | Value of collateral | Interest rate | Monthly payment |
|---|---|---|---|---|---|---|
| Ally Financial, Inc #9552 | 2017 Dodge Ram | 04/2023 | $28,633.00 | $20,500.00 | 8% | $581.00 |
| Union Bank & Trust #0272 | 2020 Cadillac Escalade | 04/2024 | $45,522.00 | $35,100.00 | 8% | $924.00 |

**3.4  Claims for which § 506 valuation is applicable. Request for valuation of security, payment of fully secured claims, and modification of undersecured claims.**

*Check one.*

☐ **None.** *If "None" is checked, the rest of § 3.4 need not be completed or reproduced.*

**The remainder of this paragraph will be effective only if there is a check in the box "included" in § 1.1.**

☐ The debtor(s) request that the court determine the value of the collateral securing the claims as listed below. For each non-governmental secured claim listed below, the debtor(s) state that the value of the collateral securing the claim should be as set out in the column headed *Value of collateral*. For secured claims of governmental units, unless otherwise ordered by the court, the value of the collateral securing the claim listed in a proof of claim filed in accordance with the Bankruptcy Rules controls over any contrary amount listed below.

Secured claims will be paid the lesser of the amount of the claim or the value of the collateral with interest at the rate stated below. The portion of any allowed claim that exceeds the value will be treated as an unsecured claim under Part 5 of this plan. If the amount of a creditor's secured claim is listed below as having no value, the creditor's allowed claim will be treated in its entirety as an unsecured claim under Part 5 of this plan. Unless otherwise ordered by the court, the claim amounts listed on a filed and allowed proof of claim will control over any contrary amount listed below, except as to value, interest rate and monthly payment.

The holder of any claim listed below as having value in the column headed *Value of collateral* will retain the lien on the property interest of the debtor(s) or the estate(s) until the earlier of: (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge of the underlying debt under 11 U.S.C. § 1328, at which time the lien will terminate and be released by the creditor.

| Creditor and last 4 digits of account number | Collateral | Purchase date | Debt/ estimated claim | Value of collateral | Interest rate | Monthly payment | Estimated unsecured amount |
|---|---|---|---|---|---|---|---|
| DFA | All Real & Personal Property | 12/2023 | $3,157.00 | $3,157.00 | 10% | $68.00 | N/A |

**3.5 Surrender of collateral.**

☒ **None.** *If "None" is checked, the rest of § 3.5 need not be completed or reproduced.*

**3.6 Secured claims not provided treatment.** In the event that a secured claim is filed and allowed that is not provided treatment in the plan, the trustee shall pay such creditor the claim amount *without interest* after this plan in all other respects has been completed.

# Part 4: <u>Treatment of Fees and Priority Claims</u>

**4.1 General.**

Trustee's fees and all allowed priority claims, including domestic support obligations, will be paid in full without postpetition interest.

**4.2 Trustee's fees.**

The trustee's fees are governed by statute and may change during the course of the case.

**4.3 Attorney's fees.**

The attorney's fee is subject to approval of the court by separate application. The following has been paid or will be paid if approved by the court:

Amount paid to attorney prior to filing: <u>$110.00</u>

Amount to be paid by the trustee: <u>$4,256.00</u>

Total fee requested: <u>$4,256.00</u>

Upon confirmation, the attorney shall receive an initial fee as provided in the application and approved by the court from funds paid by the debtor(s), after administrative costs have been paid. The remaining fee will be paid at the percentage rate of the total disbursed to creditors each month provided in the application approved by the court.

The initial fee and percentage rate requested in the application are <u>$1,500.00</u> and 25 %, respectively.

**4.4   Priority claims other than attorney's fees and those treated in § 4.5.**

Filed and allowed priority claims (usually tax claims), including without limitation, the following listed below, will be paid in full in accordance with 11 U.S.C. § 1322(a)(2), unless otherwise indicated.  For claims filed by governmental units, the categorization of the claim by the creditor (secured, priority, nonpriority unsecured) and amounts shall control over any contrary amounts unless otherwise ordered by the court.

| Creditor | Nature of claim (if taxes, specify type and years) | Estimated claim amount |
|---|---|---|
| IRS | 2021-2024 Income Taxes | $39,196.83 |
| State of AR | 2021-2024 Income Taxes | $8,106.42 |

**4.5   Domestic support obligations.**

☒ **None.** *If "None" is checked, the rest of § 4.5 need not be completed or reproduced.*

# Part 5: <u>Treatment of Nonpriority Unsecured Claims</u>

**5.1   Nonpriority unsecured claims.**

Allowed nonpriority unsecured claims shall be paid at least as much as they would receive if the debtor(s) filed a Chapter 7 case. **Allowed nonpriority unsecured claims shall be paid in full (100%) unless a different treatment is indicated below.**  For above median income debtor(s), the distribution to unsecured creditors includes any disposable income pool (monthly disposable income times 60 months) from Form 122C-2, unless the debtor(s) are unable to meet the disposable income pool based on the following circumstances: _____
_____

*Check one, if applicable.*
☒ A PRORATA dividend, including disposable income pool amounts, if applicable, from funds remaining after payment of all other classes of claims; or

☐ Other.  Please specify _____.

**5.2   Special nonpriority unsecured claims and other separately classified nonpriority unsecured claims.**

☒ **None.** *If "None" is checked, the rest of § 5.2 need not be completed or reproduced.*

**5.3   Maintenance of payments and cure of any default on nonpriority unsecured claims.**

☒ **None.** *If "None" is checked, the rest of § 5.3 need not be completed or reproduced.*

# Part 6: <u>Contracts, Leases, Sales and Postpetition Claims</u>

**6.1   Executory Contracts and Unexpired Leases.**

☒ **None.** *If "None" is checked, the rest of § 6.1 need not be completed or reproduced.*

**6.2   Sale of assets.**

☒ **None.** *If "None" is checked, the rest of § 6.2 need not be completed or reproduced.*

**6.3   Claims not to be paid by the trustee.**

☒ **None.** *If "None" is checked, the rest of § 6.3 need not be completed or reproduced.*

**6.4   Postpetition claims.**

*Check one.*
☐ **None.** *If "None" is checked, the rest of § 6.4 need not be completed or reproduced.*

☒ Postpetition claims pursuant to 11 U.S.C. §§ 1305 and 1322(b)(6) may be added to the plan by the debtor(s) and, if the creditor elects to file a proof of claim with respect to the postpetition claim, the claim may be treated as though the claims arose before

the commencement of the case, to be paid in full or in part through the plan. Upon completion of the case, any unpaid balance of such claim may be subject to discharge.

# Part 7: <u>Vesting of Property of the Estate</u>

**7.1** **Property of the estate will vest in the debtor(s) upon:**

*Check the applicable box.*

☐ plan confirmation.

☒ entry of discharge.

☐ other: _____

# Part 8: <u>Nonstandard Plan Provisions</u>

☒ **None.** *If "None" is checked, the rest of Part 8 need not be completed or reproduced.*

*Under Bankruptcy Rule 3015.1(c), nonstandard provisions must be set forth below. A nonstandard provision is a provision not otherwise included in the Official Form or deviating from it. Nonstandard provisions set out elsewhere in this plan are ineffective.*

**8.1** **The following plan provisions will be effective only if there is a check in the box "included" in § 1.2.**

# Part 9: <u>Signatures</u>

By filing this document, the attorney for the debtor(s) or the debtor(s) themselves, if not represented by an attorney, certify(ies) that the wording and order of the provisions in this Chapter 13 plan are identical to those contained in plan form used in the Eastern and Western Districts of Arkansas, other than any nonstandard provisions included in Part 8.

<u>/s/Lyndsey D. Dilks</u>                     Date<u>: 07/28/25</u>
**Signature of Attorney for Debtor(s)**

<u>/s/Marty Duncan</u>                          Date<u>: 07/28/25</u>
**Signature(s) of Debtor(s)**

<u>/s/Angela Duncan</u>                         Date<u>: 07/28/25</u>
**Signature(s) of Debtor(s)**
**(required if not represented by an attorney;**
**otherwise optional)**

Debtor(s) <u>MARTY & ANGELA DUNCAN</u>                     Case No. _____

# Arkansas Chapter 13 Plan
## (Local Form 13-1)

---

Original Plan ☒     Amended Plan ☐     **For an amended plan, all applicable provisions must be repeated from the previous plan(s). Provisions may not be incorporated by reference from previously filed plan(s).**

List below the sections of the plan that have been changed:

_____

State the reason(s) for the amended plan, including any changes of circumstances below. If creditors are to be added, please complete Addendum A as well as file any appropriate amended schedules.

_____

The Amended Plan is filed:     ☐ Before confirmation
                               ☐ After confirmation

# Part 1: <u>Notices</u>

To Debtor(s): This form sets out options that may be appropriate in some cases, but the presence of an option on the form does not indicate that the option is appropriate in your circumstances. Plans that do not comply with local rules and judicial rulings may not be confirmable.

Original plans and amended plans must have matrix(ces) attached or a separate certificate of service should be filed to reflect service in compliance Fed. R. Bankr. P. 2002.

To Creditors: Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. You should read this plan carefully and discuss it with your attorney if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one. If you oppose the plan's treatment of your claim or any provision of this plan, you or your attorney must file a written objection to confirmation with the United States Bankruptcy Court either electronically (if filer is approved for electronic filing) or at the following addresses:

- **For Eastern District cases** (Batesville, Helena, Jonesboro, Little Rock, or Pine Bluff Divisions): United States Bankruptcy Court, 300 West 2nd Street, Little Rock, AR 72201

- **For Western District cases** (El Dorado, Fayetteville, Fort Smith, Harrison, Hot Springs, or Texarkana Divisions): United States Bankruptcy Court, 35 E. Mountain Street, Fayetteville, AR 72701

The objection should be filed consistent with the following timelines:

☒ **Original plan filed** *at the time* **the petition is filed:** Within 14 days after the 341(a) meeting of creditors is concluded.

☐ **Original plan filed** *after* **the petition is filed or amended plan (only if filed** *prior* **to the 341(a) meeting):** Within the *later* of 14 days after the 341(a) meeting of creditors is concluded or 21 days after the filing of the plan.

☐ **Amended plan:** Within 21 days after the filing of the amended plan.

**The court may confirm this plan without further notice if no objection to confirmation is timely filed.**

The following matters may be of particular importance. *Debtor(s) must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not included" or if both boxes are checked, the provision will be ineffective if set out later in the plan.*

| 1.1 | A limit on the amount of a secured claim, set out in Section 3.4, which may result in a partial payment or no payment at all to the secured creditor. | ☐ Included | ☒ Not included |
|---|---|---|---|
| 1.2 | Nonstandard plan provisions, set out in Part 8. | ☐ Included | ☒ Not included |

# Part 2: Plan Payments and Length of Plan

2.1　**The debtor(s) will make regular payments to the trustee as follows**:
*Inapplicable portions below need not be completed or reproduced.*

**Original plan:** The debtor(s) will pay $<u>2,500.00</u> per month to the trustee. The plan length is <u>60</u> months.

The following provision will apply if completed:

Upon completion of Accountant payments, plan payments will change to $<u>3,000.00</u> per month beginning on **APRIL 2026**.

**Amended plan:** Plan payments will change to $_____ per month beginning on the later of the date of filing of the amended plan or _____. The plan length is _____ months.

The following provision will apply if completed:
　　Plan payments will change to $_____ per month beginning on _____.

The debtor(s) will pay all disposable income into the plan for not less than the required plan term, or the applicable commitment period, if applicable, unless unsecured creditors are being paid in full (100%). If fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan.

2.2　**Payments shall be made from future income in the following manner:**

　　☒ Direct pay of entire plan payment or _____ (portion of payment) per month.

2.3　**Income tax refunds.**

*Check one.*
☒ Debtor(s) will retain income tax refunds received during the plan term and have allocated the refunds in the budget.

☐ Debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing the return and will turn over to the trustee all income tax refunds received during the plan term.

☐ Debtor(s) will treat income tax refunds as described below. The debtor(s) will supply the trustee with a copy of each income tax return filed during the plan term within 14 days of filing.

_____
_____

2.4　**Additional payments.**

　　☒ **None.** *If "None" is checked, the rest of § 2.4 need not be completed or reproduced.*

# Part 3: Treatment of Secured Claims

3.1　**Adequate Protection Payments.**

　　*Check one.*
　　☐ **None.** *If "None" is checked, the rest of § 3.1 need not be completed or reproduced.*

　　☒ The debtor(s)' plan payment to the trustee will be allocated to pay adequate protection payments to secured creditors as indicated below. The trustee shall be authorized to disburse adequate protection payments upon the filing of an allowed claim by the creditor. Preconfirmation adequate protection payments will be made until the plan is confirmed. Postconfirmation adequate protection payments will be made until administrative fees are paid (including the initial attorney's fee). Payment of adequate protection payments will be limited to funds available.

024 Union Bank & Trust Company      L O A N S  S Y S T E M      Processing Date   7/29/2025   Page    1
                                    Full Record Display             Processing Thru    7/29/2025   LN6200P1
                                    000000&#9608;&#9608;&#9608;&#9608; 000                System Date       7/30/2025   9:22:31

```
MARTIE EUGENE DUNCAN              Account Nbr/Part Code  0000000██████████000        - - - - S T A T U S - - - -
ANGELA RENEE DUNCAN              Short Name          DUNCAN, MARTIE EUGEN            Daily Status
119 S CEDAR ST                  App Code      CL  Branch         001                Monthly Status
DE WITT AR 72042                G/L Type    0210  System Type      1                Current Loan Status      A
                                                  Orig System Typ  1                Cr Bureau Sts Ovrd       0
                                Customer Key          00000000043904                Cr Bureau Spec Sts
                                Converted Account Key                               Impaired Status          I
                                Opening SourceID      B524AKB
                                Universal Loan Id
- - - - - - - - - - - - - - - - - - - - - - - D A T E S - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Original Note      020240412   Last Billed        020250811   Boarding Date       020240502   Conversion       000000000
Orig Maturity      020291027   Last Extension                 Current Note Date   020240412   Non-Accrual      000000000
First Payment      020240527   Last Right to Cure 000000000   Advance Date        020240412   Charge Off       000000000
Next Earn Date     020250730   Last Statement     020250725   Accrue thru Date    020250729   Closed           000000000
Next Due           020250611   Last Maintenance   020250401   Principal Paid To   128,747.22  Backdate Limit   020240412
Last Payment       020250627   Last Cr Bur Report 000000000   Interest Paid To    020250627   Cr Review Date   000000000
Last Transaction   020250721   Previous Stmt Date 020250626   Current Maty Date   020300411   Cr Exp Date      000000000
Reg E Statement    000000000   Initial Expiration 000000000   Last Escrow Analy   000000000   Prev Next Due    020250611
- - - - - - - - - - - - - B A L A N C E S - - - - - - - - - - - - - - - - - -      - - - - A G G R E G A T E S - - - - -
Current Loan Amount      128,747.22   Class Bal: OLEM           .00                           Principal         # of Days
Original Loan Amount     128,747.22   Class Bal: Substandard    .00     CTD                      .00               0
Current Balance           44,436.35   Class Bal: Doubtful       .00     MTD                1,288,654.15          29
Proceeds                 128,531.22   Class Bal: Loss           .00     QTD                1,288,654.15          29
Scheduled Balance               .00   High Balance LTD   128,747.22     YTD                9,426,599.76         210
Escrow Balance                  .00   Low Balance LTD     44,436.35     LTD               35,894,591.60         474
Payoff                    45,744.58   High Balance YTD    45,062.21     Aggr Begin Date                020240412
Prepayment Penalty              .00   Low Balance YTD     44,436.35     Aggr Accrue Thru Date          020250729
Curtailment Balance             .00   Total Draws        128,747.22     Next Aggr Date                 020250730
Unapplied Balance               .00   Available Balance         .00
- - - - - - - - - O T H E R   A M O U N T S - - - - - - - - - - -                  - - - - - C O U P O N S - - - - -
Prin Billed          917.24   Total Due              2,751.72                       Coupon Mail Location     C
Prin Paid LTD     84,310.87   P & I Payment Amt        917.24                       Coupon Order Date        020291027
Econ Accr YTD           .00   Escrow Payment Amt          .00                       Coupon Quantity          000
Escrow Billed           .00   Unassigned Escrow           .00                       Cpn Max Qty              999
Ins Billed              .00   Escrow Bal w/o Unas         .00                       Cpn Reprint              N
```

*(handwritten)* 45,744.58

*(handwritten)* 11.10 ¡d

024 Union Bank & Trust Company  L O A N S S Y S T E M  Processing Date 7/29/2025 Page 2
Full Record Display  Processing Thru 7/29/2025 LN6200P1
0000000███████2 000  System Date 7/30/2025 9:22:31

```
- - - - - - - - - - - - - - -I N T E R E S T- - - -*- - - - - - - - - - - - - - - - - - - -
Per Dm            11.096744069   Original Interest Rate         .0899000   Interest Rate                  .0899000
Billed                     .00   Fractional Accr              .007179952   Capitalized LTD                     .00
Earned CTD                 .00   Non-Accrual Prior To                .00   Paid YTD                       2,955.60
Earned MTD              321.80   Non-Accrual Since                   .00   Paid Previous YTD              5,641.88
Earned QTD              321.80   Accrued Since Last              133.16-   1098 Previous YTD                   .00
Earned YTD            2,354.03   Total Accrued                   366.19   Curr YTD 1098 Fees                  .00
Earned LTD           8,963.67   Original Interest Amt                .00   Prev YTD 1098 Fees                  .00
Min Fin Chg                .00   Unearned Interest                   .00   Original Term                        66
Initial Rate          .0000000   Rebate Amount                       .00   Remaining Term                       66
APR                   .00000%   Default Rate/Factor            .0000000   Post-Mty Rate/Factor           .0000000
Penalty Accr Int           .00   Default Rate Days                   000   Post-Mty Rate Days                  000
Interest Code                C   Default Rate Type                          Post-Mty Rate Type
                                 Default Interest Rate          .0000000   Post-Mty Interest Rate         .0000000
- - - - - - - -P A S T   D U E- - - - - - - - - - - -     - - - -P R E P A I D- - - - - -  - -E X T / R E N W- -
Principal            1,085.52   Counter 1              6   Interest                      .00   No. Extensions          2
Interest               748.96   Counter 2              4   Principal                     .00   Payments Extended       4
Reserve Interest           .00   Counter 3              0   Escrow                        .00   No. Renewals            0
Escrow                     .00   Counter 4              C   YTD Interest                  .00
Insurance                  .00   Counter 5              C   Economic Accrual              .00
Fees                       .00   Counter 6              C
Total Past Due       1,834.48
Past Due Days               48
- - - - - - - - - - - - - - -D E A L E R   R E S E R V E - - - - - - - - - - - - - - - - - - - -
Dealer No               00000   Frac Accr Res           .000000000   Res Accrued                     .00
Disb Method                     Per Diem                .000000000   Res Accr Since Lst              .00
Recourse Code                   Yield                     .0000000   Res Billed                      .00
Charge-off Control Flag                                              Res Pd YTD                      .00

- - - - - - - - - - - - -L A T E   C H A R G E S - - - - - - - - - - - - - - - - - F E E S - - - - - - - - - -
Method                   1   PD Ntc 1   1   Assessed LTD           942.04         Financed            Paid
Min/Max                  3   PD Ntc 2   0   Assessed YTD           642.04   LTD        .00           95.00
Factor               10000   PD Ntc 3   0   Waived LTD                .00   YTD        .00           50.00
Waive/Notice                 PD Ntc 4   0   Due                    942.04   QTD        .00             .00
Grace Ovrd              10   PD Ntc 5   0   Paid LTD                  .00   MTD        .00             .00
LC 1098 Rep Flag         N   PD Ntc 6   0   Paid YTD                  .00
Coll Method              A                  Paid Prev YTD            .00
Dte Lst Cmp Pmt   6/27/25                   Max Lt Chg YTD   999,999,999.99
Min Lt Chg Ovrd         .00                 Max Lt Chg LTD   999,999,999.99
Max Lt Chg Ovrd      100.00
- - - - - - - - - - - - - - -R E L A T E D   C O L L A T E R A L - - - - - - - - - - - - - - - - - - - - -
Type   Short Description    Description              Market Value      Pledge Amount        Prim  Rel Date
003    2020 CADILLAC ESCALA  2020 CADILLAC ESCALADE ESV 4D    40,800.00       54,086.00      Y
013    2007 TRAIL-LITE 5884  2007 TRIAL-LITE TRAVEL TRAILER    9,900.00            .00        N
```